Good morning. Did you hear my identification then? We did. You may proceed. The first matter to address is counsel's failure to format the opening brief according to Circuit Rule 22-1, Subdivision E, whereby uncertified issues appear last and are labeled as such while certified issues appear first, also labeled as such. I request, despite counsel's failure, that the Court not penalize Mr. Anthony and consider the cruel and unusual punishment argument, which was not certified. Well, we certainly will not punish Mr. Anthony for counsel's failure. We may have a word or two about counsel, but I don't think so. You may proceed. You understand, of course, if issues are uncertified, we can't consider them unless we ourselves certify them. So you still have that burden of persuading us to certify them. But you may go ahead and address whichever issues you wish. Thank you. The main issue I would like to address, really, is the cruel and unusual punishment argument, which the 25-year rule, the statute, the California statute, is that what you're talking about? It's the third-strike sentence in 25 years. Are you prepared for us to overrule the Supreme Court? Is that it? In to overrule the California? This is a very specific type of case. It's not generally just the street three-strikes law. In this particular case, the argument is, essentially the argument is, to cut through all the legal technicalities, is that the result in this case is a manifest injustice. The Mr. Anthony is a person who, from the beginning of his life, was basically abandoned by everybody. And he kept trying, in many misguided ways, but as well in other ways, to somehow conform to society. He never received, from the record in this case, there's no indication he ever received the kind, any kind of intervention that he really needed. And he, there were many opportunities the State had. He was a foster child of the State, a ward of the State, until he was 18. He had, he was, he attempted to commit suicide when he was 12 by standing in the road in front of a speeding car. And he was committed to a hospital, and he was diagnosed with certain mental illness as well as he was diagnosed with depression, atypical bipolar disorder. But how do we get around the authority of the Supreme Court that has held that this kind of sentence is not clear and unusual punishment? What makes this case different? I don't mean to minimize at all Mr. Anthony's situation, but I must tell you, I don't think there's any of us who have been sitting here that haven't seen a lot of criminal defendants who have a genuine hard luck story. Again, I don't mean to minimize at all when I say hard luck story. People often, or perhaps I might say usually, when they get into this kind of situation, have had help, have, you know, haven't had, always had the best chance in life. Nevertheless, society decides that putting them away so they don't harm somebody else is what the appropriate thing is to do. And I don't know how, if you have an argument that, you know, I'm sympathetic, I think my colleagues are sympathetic, you know, we all, you know, our hearts bleed for people who get into bad situations because they have a bad start in life. But what can we do? Well, as I argued in the briefs, this is kind of an amalgam of a Robinson Powell and, you know, there's a number of examples of cruel and unusual punishment. It's not one or the other specifically. And so because the Supreme Court, Robinson and Powell, I mean, there is a 4-1-4 or a 5-4 in a sense plurality that seems to indicate that it's possible that acts that could be considered non-volitional because of some sort of mental illness should not be punished. But you have the ability to, you, I mean, there's an ability in the state law to bring an insanity defense, which would then defeat mens rea or perhaps raise a question of capacity to stand trial. So those are safeguards right there. But, you know, what your client did here, I mean, I must tell you, it's not the most You know, I think all of us have seen far worse crimes, but it's pretty serious. He tied up a person and it must be, surely be frightening and very scary to be tied up. And, you know, you never know what this person will do to you. They might club you. They might torture you. They might rape you. And so that's pretty serious. It's not just this is somebody who committed an act of physical violence against another human being. And I'm not aware of any room in the Supreme Court cases when you're dealing with that kind of crime as opposed to writing a check or, you know, something that's clear doesn't involve physical violence where there's room for a cruel and unusual punishment argument. Well, under, in this case, in the abstract, certainly the crime is very serious. But if you look at the particular facts by which the victim in this case asked Mr. Anthony two or three times, are you sure you want to commit this crime? It did not sound as if the victim really felt threatened. And the evidence shows that Mr. Anthony was crying while he was committing the crime. I think the issue goes really to the strike, the failure to strike strikes of the trial court. The fact that the sentence is 25 years to life is based on a failure to strike strikes. And the first strike that he had when he was 19 was not a crime against a person because he knew there were no people. But the state court had authority to strike or not strike under state law. And if the judge, you know, perhaps if, you know, another judge had been sitting, he might have exercised discretion differently. But having exercised discretion as he did, he invokes the power of state law, which requires us to count the strike. And, again, I'd like to help. I'd like to be persuaded otherwise. But I just don't see how I could write an opinion saying that this strike, which state law clearly authorizes the state judge to count, even if I personally look at it and would disagree with it, but I'm not the state judge, how I can say this doesn't count for purposes of federal law. How many different lawyers did Mr. Anthony have in this case? All together in this case. All together. He had a trial lawyer. He had an appellate lawyer. He had ‑‑ I believe he did not have counsel until the first time the Ninth Circuit appointed counsel on appeal. And that counsel ‑‑ Would you call it a trial lawyer when he met with him once in 600 days of incarceration and that was the day before the trial started? I'm sorry. Did I ‑‑ Is that a trial lawyer, would you say? Well, that's correct. The problem is, is that Mr. Anthony never raised the general incompetence of trial counsel, really only raised the issue that trial counsel should have ‑‑ One of the issues was that he raised was inadequate counsel. He did raise inadequate counsel, but he did not raise the issue of inadequate counsel specifically dealing with failure to investigate, present defense, various other ‑‑ Every one of those was set forth in his papers, pro se. Okay. Well, it was generally. He subtitled it under a heading that simply that trial counsel had failed to ‑‑ I mean, trial counsel ‑‑ He didn't interview his son, who the government or the State had already said was going to testify in his favor. He didn't interview any other witnesses, didn't call an expert witness. Correct. And he didn't raise the competency issue. Correct. Certainly that argument has been made, and it was made by Mr. Anthony and in the briefs here, in the brief here. Incompetence of counsel is one way to get at this issue. So that is ‑‑ It looks to me like it's the only way, because as we've already discussed, the Supreme Minor offenses qualify under the three strikes rule. Correct. And so it seems to me that that's a losing argument. The cruel and unusual punishment, yes. Well, again, I ‑‑ Excuse me. Go ahead. If you were ‑‑ if you were ‑‑ if you were ‑‑ if you ‑‑ what would be the rationale for relief in this case? Well ‑‑ I'm just assuming you were writing the bottom line for the court. What would you say? Manifest injustice. Oh, boy. You've got to get a better one than that, because how can we say it was manifest injustice when there's no doubt about the strikes on this record, and there's no doubt about his opportunities not to do the last crime? In fact, the person who was talking to him, you were right, he asked questions. He was trying to talk him out of committing the crime. Yes. But, no, he said, I mean it, and he had his gun, and he showed it to him, and he said, I mean it, yes, I intend to do it. Now, when we read the record, what can we see except that strike one, strike two, which are there, and then strike three? I think his concern is ‑‑ I don't know what his concern is, but he probably assumed ‑‑ I don't know what he assumed, but he did the crime. You don't know what he assumed at the time of the crime or at the time he entered the plea? No, at the time he committed the crime, after he had had opportunities not to do it. In fact, he was trying to talk him out of doing it, and the amount of money he was going to get wasn't going to carry him for very long. Well, based on the prior mental health records, it appears that Mr. Anthony has a compulsion to help, to hurt himself, and that basically that is, I mean, part of the character logical or illness that he has, mental illness he has. Yes, but you see, in hurting himself, he hurts others. He puts others at risk of being hurt because the person he was robbed, you say, wasn't frightened. We don't know. And I'm not suggesting or trying to say, but ‑‑ I mean, if there had been a fire, I mean, you know, it's an earthquake, while the person was tied up, I mean, it's a dangerous thing. Yes, it's a dangerous thing. You know, getting back to some of the questions that Judge Panner asked you about, unfortunately, though, he pled guilty, so any ineffectiveness of counsel that might have been for failure to investigate and the like gets collapsed. I mean, I guess what you'd have to argue is that a more effective counsel would have discovered facts, would have provided a clear defense at trial, and would have advised him against pleading guilty or urging not to plead guilty because he had such a great defense at trial. And that's a difficult case to make. I don't think it's been made here. The state court examined the claim, and it's hard to say there was an unreasonable application of federal law. Anyway, you're well over your time. Thank you. May it please the Court. My name is Tammy Warwick, and I represent the appellant, respondent, the warden. Just a couple of comments to make about this case. Mr. Anthony pled guilty based on a plea agreement that benefited him by reducing his sentence 10 years. Given the evidence against him, it was in his best interest to make this plea. He knew the terms. He knew the terms involved the two prior convictions that was part of the plea agreement, and he benefited from that, and the agreement was fulfilled. He should not now be able to challenge this plea. What exactly benefit did he get? He won it with a 25-to-life sentence, which means he becomes eligible for parole something like 25 years. There's a little time off for good behavior, I believe. No, actually there isn't. There is not. So it's a straight 25 years. At 25 years, he's eligible for parole. And, of course, then he's subject to the parole process, and few, at least in recent years, people who actually get parole are relatively few. Well, actually, and that argument was raised. I'm just asking a factual question. The parole policy that's been challenged has been dealing with murderers. I'm sorry? Has been dealing with murderers that I'm aware of, the federal cases that have been, and that murderers. Oh, I see. I see. So people who do not commit murders actually have a realistic chance of getting parole? I'm not aware of any claims that are saying it's a blanket parole. I'm just wondering, as a matter of fact. So what this did, the plea bargain, it would have been 35 years before he would have been eligible for parole without a plea bargain. Correct. If he had been convicted. If he had been convicted. Yes. Well, if he had been convicted. But what he got was a genuine 10-year reduction in the time he'd have to wait for what sounds like a genuine shot at parole. Correct. Okay. All right. Okay. And is there anything else you've heard this morning that you think needs clarification? No, unless you have any further questions, we'll submit. One question. There's no question that both the trial court and his lawyer mistook what the law was by telling him he might get 20 percent off after 25 years. The record's clear. The trial judge made that comment at sentencing, and Mr. Anthony claims his trial counsel advised him, even assuming that's true, given the state of the law at that time, that it wasn't clear whether until 2001 when the California Supreme Court ruled that three strikes defendants don't get parole until they're 25 years. I think that, yes, he was. The trial court misadvised him. He did plead guilty under a misunderstanding from both the court and his lawyer  There's no evidence as to what his trial counsel advised him and when, but the trial court made that comment at sentencing. He had already entered into the plea agreement at that point, so that wasn't part of the plea agreement, and certainly we argue that it's not anything he relied on based upon the fact he already entered the plea. But that seems to me that would be an issue he could litigate. down the road when his 20 years is up, and if he claims parole, he might be able to make some sort of equitable claim to early parole eligibility, which conceivably he could litigate at that time. You mean as to whether he should get parole release or not? If he gets 20 years down the road after his sentence and he can apply for parole, it seems to me, and if he gets denied as being too early, he might have a claim he can go to superior court and claim, look, I entered the plea under this misapprehension. There's nothing that's happened that precludes that kind of claim. I don't know about in State court, but as far as Federal court, he would be precluded because of the fact that the Supreme Court has held that, first of all, the State has no obligation to inform about parole eligibility. There's no constitutional right to being informed about that. And then also as far as an ineffective assistance of counsel claim, there's no constitutional right to be advised regarding parole eligibility. And also it has to be a gross mischaracterization. Being eligible for parole in 20 years versus 25 years is not a gross mischaracterization of his sentence. Well, when we get to the 20 years, it may seem a lot bigger to him. But anyway, that's something for the future. Thank you very much. Thank you.
judges: Kozinski, Farris, Panner